al. Good morning. May it please the Court, my name is Trina Veal Muto and I represent plaintiff appellants Reduga USA Corporation Nikolai Romanofsky and Vladlina Yakovleva. I would like to reserve four minutes for rebuttal. At issue in this case is whether the Secretary of the Department of Homeland Security and senior staff at DHS headquarters in Washington, D.C. may refuse visas and the exercise of the Section 232 applicable law. In 6 U.S.C. Section 236b.1, the provision authorizing the Homeland Security Secretary to refuse visas, Congress expressly provided that any visa refusal must be, quote, in accordance with law. Is it your position that foreign nationals can sue in an American court these visa denials when there is no American citizen raising a constitutional challenge? Well, I think your question, Your Honor, regarding American citizens and constitutional challenges, goes to the consular non-reviewability doctrine and it's our position that that doctrine and the exception to that doctrine for U.S. citizens is not applicable in this case. Okay, so that takes me back to can Russian citizens bring a lawsuit in the United States challenging visa denials? If it's the DHS Secretary that denied the visa under this provision, it is our position, yes, that they can bring the lawsuit. What's your best case that would support the right of foreign nationals to sue to get visas? Well, I think our best – When there's no constitutional challenge, no American citizen. I think our best case is the plain language of the statute. Because Congress knew its authority over immigration matters was plenary, it provided in the Homeland Security Act, in this provision, that any visa refusal has to be made in accordance with law. I think it's very peculiar language because it then goes on to say, which authority shall be exercised by the Secretary of State, through the Secretary of State, except that the Secretary shall not have authority to alter or reverse the decision of a consular officer to refuse a visa to an alien. So it seems to be saying the DHS can do it, but then it seems to be saying, well, actually you can't do it. It has to exercise it through the Secretary of State, whatever that means. And then it goes back to the consular officers again. So we seem to be back to the consular officers and the consular officer doctrine. Well, it's a bit of a formality, the way that Congress set it up. Basically, in the Homeland Security Act, they changed the way that the visa process they changed the officer in charge of the visa process and made it the Department of Homeland Security secretary. And so the way it works is the secretary informs the Secretary of State, who then informs the consular officer to deny the visa. So ultimately, it was really the consular officer that denied the visa. No, because I don't know about really, but inform, at least, it was the consular officer that denied It's purely carrying out the decision of the Department of Homeland Security Let me ask you this, because I'm not quite sure I understand the reasons behind any of this. If the consular decision to deny a visa to someone, perhaps because that consular official erroneously ruled that it was untimely or made a mistake of something or erred as a person really had a right to get in, to get a visa, but was denied it, that that is absolutely unreviewable. And now you have, even though it's a mistake, and now you have someone who is not a citizen who is not here and who is denied a visa because the DHS says, this is a security issue, we shouldn't be letting these people in. That that is more reviewable than the person who is just, should have been let in, but there was a mistake. Well, with respect to the person who had the mistake made by the consular officer, our position then is that the exception to the consular non-reviewability doctrine would apply if there's a U.S. citizen that exercises. But, but That wasn't a true response. No, but everybody's not, everybody's a non-citizen. Right. But why if, if, if, if, if, if, if it's, what sense does it make to say that somebody who was, who, who should have gotten a visa, but didn't because they made a mistake as to the availability under American law gets no review, and somebody who is denied for a good reason, or at least what may or may not be a good security reason, should get a review? Well, I don't, I can't explain why Congress set up the system, but that's the Well, I'm just trying to think, why would they, why would they set up the system? But, but perhaps it's because the Department of Homeland Security was created through the act that gave the head of Department of Homeland Security the authority to refuse a visa. This official, it was the first time they had visa authority, and Congress wanted to make a check that when they invoke this authority, it has to be in accordance with law. This is the system that Congress set up. DHS rarely invokes this authority. We have heard of no other case where a visa has been refused by DHS Secretary Headquarters, so You're not limited to, to security reasons, and this was not a security reason in this case. Absolutely not. The Secretary of State's visa refusal authority has to do with national security issues. Our client, the basis of the refusal has to do with inadmissibility for making a material misrepresentation, and that misrepresentation, the alleged misrepresentation, there's a square, there's a Ninth Circuit decision squarely on point saying that that representation was not material, but DHS ignored it completely, and Let me ask you a question. How was the Secretary, how did he, how would he know to follow Ninth Circuit law in this? That's a good question, Your Honor. Basically, the materiality test that this Court adopted in Forbes came from the Supreme Court, and as an executive agency that executes the laws, the executive agency is bound by the interpretations of the judiciary. So the DHS Secretary arguably was bound by Forbes in this case because this case originated in the Ninth Circuit. But even if you don't accept that it was bound by Forbes, it would still be bound by the test that the Supreme Court incongrues versus, incongrues, and would be bound by that test. But even if you don't accept that the DHS Secretary was bound by the judiciary, there's still a whole body of law. The Foreign Affairs Manual lays out what constitutes a material misrepresentation. Okay, suppose he's wrong. I mean, suppose he just blows it, makes a mistake. Yeah. Where do foreign nationals who are not present in the United States, who don't have American citizens trying to get them to the United States, where do they have the right to get that reviewed in an American court? If just Joe and Jane Khrushchev in Moscow want to apply for a visa, they get turned down. With no U.S. citizen petitioning? Yeah, where do they, what gives them the right to sue to get a visa? That's a good question. And I think it's a question that this Court, I'll answer it, but then I think it's not a question this Court has to answer in this case. In Rizul v. Bush, the Supreme Court said that enemy combatants are entitled for review of their non-habeas statutory claims. These are people in custody, because those people were in custody of the United States. But I think it's wrong to characterize it as a purely habeas case, because what the Supreme Court was talking about was the non-habeas statutory claims. But they were in custody in the United States, were they not? In Guantanamo. Well, yes, but that was... That's to give them the link to come to our Court. I don't see where people who happen to be living in, you know, Moscow, Russia, have the right to come and complain about the United States turning down a visa. Well, in this case, we also have the plaintiff, Roduga, the USA Corporation, that is an American corporation. Yeah, but they're not bringing a constitutional challenge. They did raise a constitutional challenge below in the district court, challenging the right to have a fair adjudication of the visa application after the district court issued the mandamus order, and also due process right to not have bias in the actual decision. The record evidence is as soon as Mr. Romanofsky applied for the immigrant visa in this case, a consular officer issued a memo stating that it would like to make a 212a6c, a material misrepresentation, finding against the client. There was a — in this case, from the outset, the consulate was determined to deny this visa. There were five investigations by the embassy, the fraud office, the legal attaché's office, the FBI, an unspecified age — But that was all going through the consular office in Moscow, right? Right. And the DHS didn't get into it until there was a lawsuit here and a hurry and a deadline. Mm-hmm. After the mandamus was filed — in fact, the mandamus that the district court ordered was directed to the Moscow consular officials, but DHS stepped in and took that adjudication away from the consular officers. This case is unlike other cases that have come before the court because the consular officer never exercised discretion, never reviewed the visa application. Essentially, DHS came in, swooped in, and took that decision away from the consular official. And the consular non-reviewability doctrine is really about protecting consular officer discretionary decisions. But I think this Court has to read the language in accordance with law that — in Section 236b-1 as taking away discretion, because Congress knows how to give the DHS secretary, the attorney general, the secretary of state unfettered discretion. It's done it in other provisions of the Immigration Act, but it didn't do it in this — in this case. We have to give meaning. For it to have any meaning, we have to give — read in accordance with law to mean in accordance with governing an applicable law regarding indivisibility. I mean, there is some force to your argument because all the way through the INA, there's a lot of things that the secretary is said to be able to do with — in his discretion, and this isn't it. But it doesn't directly address the reviewability question. Correct. But one thing — when Congress put the in accordance of law language in Homeland Security Act, and this sort of separates this case from all the other cases dealing with costs for non-reviewability where the authority derives from the Immigration and Nationality Act, Congress was enacting a new law, and in it, it put forth the very standard that the APA has in Section 706 of the APA, and Congress knew that courts could declare agency actions and findings and conclusions that are not in accordance with law unlawful and set them aside. Congress put in the very — that they put in the in accordance with law standard evidence is their intention to permit APA review of DHS visa refusal. Isn't your hardest question, the one that Judge Schroeder posed, why would anybody write a statute that way that gave more authority to — more discretion to individual sort of unknown people in individual embassies abroad than to the secretary of DHS? And I think that the answer is that Congress was putting a check on the DHS. This is an area that the DHS secretary doesn't have the expertise that consular officers have. Consular officers see visa applicants day in and day out and refuse — More — probably more likely to be subject to political forces of various kinds, the consular officers are mostly Foreign Service or all Foreign Service people, are they, who are kind of career people doing this? Mm-hmm. They are. We have no indication in any legislative history that there was a desire to do this. Correct. But we have to read meaning into the in accordance with law. Okay. In addition, the district court erred by not retaining mandamus jurisdiction after DHS refused the visa applications. That's another factor that makes this case different than others, because the adjudication came after an in-response to the — But the mandamus was termed mandamus to get a decision, got a decision. Got a decision. But mandamus is also appropriate to remedy the unlawful agency's failure to carry out a nondiscretionary duty. Who are we mandamusing? Sorry? Who would you want mandamus? The DHS. DHS. DHS. Yes. Because they had implicit in the district court's order was that the adjudication would be carried out in good faith and under the governing law would apply. And that didn't happen here, because the governing law was directly contrary. Well, let me ask you about that. I understand about Forbes, but Forbes doesn't address the following question. The provision about the conviction of — would relate both to whether he was convicted, but also whether he admitted that he had done whatever it was he was accused of doing and which would have barred him, made him inadmissible. And by continuing to answer this question as he did and putting aside the issue, which I think is a fairly strong one from your point of view, of whether he actually said that he was never taken into custody, but assuming that he did, why didn't that stymie the attempt to get him to admit what he did? Why didn't that? Yes. In other words, if he kept saying — if he never mentioned, although he was asked four different times, the San Diego arrest, detention, whatever it was, the people making the inquiries therefore had no opportunity to follow up and say, and did you do that? And if they had asked him that and he had said yes, then it would have been material because it would have barred him, right? Right. Well, that's a good point. The embassy, in this case, the fact of the arrest without charge was known to the embassy. Mr. Romanofsky, his immigrant visa application, even though he denied it on the application, but when asked about it specifically, fully came forth about what happened. Well, does materiality depend on what they actually knew or what he was trying to get? I don't know the answer to this. But do the actual facts and sequences matter, or is the question whether by what he did was he trying to stymie them, whether he succeeded in doing it or not? No, because the foreign affairs manual expressly covers the situation, and it says that if the truth of the fact being misrepresented is available to the consular officer through the visa lookout system or through reference to the post's own files, it cannot be said that the alien's misrepresentation tended to cut off the line of inquiry since the line of inquiry was readily available to the consular officer. What do you mean? In the foreign affairs manual. Okay. You wanted to leave some time for rebuttal. You have about three minutes left. Okay. Could I just finish answering this question? I thought you had. Sorry. I just wanted to point out that the fact alleged to be misrepresented here through the visa lookout system since 1997 and through reference to the post's own files. So DHS had knowledge and confirmation of the incident since 1997, and confirmation came in the form of FBI reports in August of 2002 and October 2002 and April 2005 before the decision, so it can't be said. Thank you. Good morning. Is it still morning? Good morning, Your Honor. Sam Bedwick for the government. May it please the Court. The best case I think that we have, I should have highlighted it more in my brief, is the Broadview Works case. That's a Ninth Circuit case. And it was 1965 during the Bracero Program, and this Court decided that there could be no review, no judicial review of a decision regarding the exclusion or admission of aliens who were applying from outside the United States. And that case dealt with, was under the Bracero Program, so it had more to do with a labor, an application to the Labor Department. So the decision was made by a decision-maker in the United States, the Labor Department, concerning aliens, applicants outside the United States. All right. But the question is why this, that's a good background fact, but the statute was much later than that. The statute about DHS and the strange in accordance with law language. It's strange only because the statute in general, the INA is not full of in accordance with law language. The statute in general, whatever the DHA can do is within its discretion or the Attorney General and so on. And this one isn't. Well, I, you're correct, Your Honor. It does not give, it's not a discretionary decision. What it's saying is that the DHS Secretary of Homeland Security has to follow the same rules that the consular officers have to follow. They don't have discretion either. They have to follow, it's in accordance with law. There has to be a ground of inadmissibility. And that's exactly how this is interpreted and applied by the, by DHS when they made this decision was we can't just discretionarily decide, well, we don't like these people and we're not going to let them in. Suppose they're wrong about whether that's a ground for admissibility, inadmissibility. I'm sorry, Your Honor. Suppose they're wrong about it being a ground for inadmissibility. Well, then we have case law on that. If a consular officer makes a mistake, it's not reviewable. It's the same, it's the same rule. Sotomayor, may I ask a question? If DuPont or General Motors wanted to bring in someone who was in Russia or something like that, or Eastern Europe, to perform a function in their plan, and there were laws that permit that, and the consular official makes a mistake and doesn't, doesn't issue the visa, does the company, does DuPont or General Motors have a remedy for that? Your Honor, no. And the case law, again, states, I believe it's D.C. law, that there's just really no distinction between the visa petitioner and the visa applicant. If we're talking about a decision to exclude an alien, then there has to be some provision for judicial review in the statute. Well, suppose DuPont says we have a constitutional property right to hire who we want to hire. Okay. Then it would be a due process question. So, right, there would have to be some right. It would be DuPont's right. And they would say that we were denied due process, the wrong factors were applied or factors weren't considered, or, well, actually, that would be abusive discretion standard. It would have to be due process. There would have to be bias. I suppose that would be a common due process. Isn't that what's being argued exactly here? Sorry? Isn't that exactly what's being argued here by the corporation? I heard the word bias mentioned at the podium today, but that was never an issue that was presented. Well, they said it wasn't bona fide, which is the same thing. I'm sorry. They said that their argument is that it wasn't bona fide, in which the decision wasn't bona fide. Well, they just didn't like the decision. I mean, it was very well laid out in the record what the factual basis was for the decision, and it was a mixed question. There were, well, there was a dispute over the facts, but then there was an application of the law of the facts. I mean, it's all very clearly laid out on what their reasoning was. So you're saying, essentially, if DHS had said, you know, the reason we're doing this is that, you know, we really don't like Russians, and so we're going to apply, we happen to have this legal ground, but we're going to apply it to Russians more than other people, then the company that tried to get them in might have some grounds? Well, I think arguably so. I mean, if we're talking about bias, that would be a due process question, and then there would, of course, there would be that kind of allegation and evidence, some kind of evidence presented along that. But that was not what was argued below. Which statute is the source of the consular? I know there's no statute saying that consular decisions aren't reviewable, but which one says that the decisions are made by consular officials? I'm sorry. Oh, which statute gives? Consular officials the authority to grant or refuse visas. There are statutes that say that the Secretary of State doesn't have the powers and duties that the consular officials have, but which is the one that says the consular officials have it? Well, Your Honor, I don't know if I have that in my background, background in my brief or not. I can't say off the top of my head. I mean, what statute says that consular officials make those decisions? Does it say in accordance with law that statute, whatever it is? Oh, I don't know, but I can tell you, Your Honor, they do not have any discretion. It is not a discretionary decision. It's purely factual determinations and applications. But I'm trying to find out what the statute says. Pardon me? I'm trying to find out what the statute says. You don't know. I don't have that in front of me, but I know they have no discretion. It's not a discretionary decision. And it's not a discretionary decision by the DHS either. It has to be a ground of indemnizability, and that's what they found. You're in AUSA, right? Yes, Your Honor. I was just wondering, but you're representing the Department of State, so. Right. I've looked in every case I could find of the exceptions. What would be the exceptions where there is a person who is seeking admission to the United States and is outside the United States, and the decision is made not by a consular officer, but somebody other than a consular officer, either that official is within the United States or outside the United States, and the only cases I can find are, well, the only exceptions I can find that Your Honors have pointed are constitutional questions, usually First Amendment cases, or in the Patel case, which is a Ninth Circuit case, a mandamus case, where it was just a failure to decide at all. Did you consult with your client in connection with this search? Oh, I did. The State Department? Yes, Your Honor. Or did you do this on your own? I'm just curious as to what extent the State Department. Oh, they watch me very closely, Your Honor. Okay. I did. Is there any case anywhere, though, construing this weird statute? I'm sorry, Your Honor. Is there any case anywhere construing this statute, 236? I'm not aware of one, Your Honor, at this time. Is there any statute other than this one that expressly gives a, you know, U.S.-based high official the authority to make a visa decision? The Secretary of State specifically can't, right? Well, that's right, Your Honor. They cannot except through this statute, where they're basically just conveying a decision. Right. Now, in Kleindienst v. Mandel, they sued the Attorney General. So they must have thought the Attorney General was the responsible party for keeping Mr. Mandel out. Why was that? Hmm. That was the case where the Attorney General had the right to waive an admissibility. Oh, it was a waiver. That's right, Your Honor. A waiver. Okay. Thank you, Your Honor. So there was a specific authority that the Attorney General had there. Well, that, the waiver authority and that, and when you ask about other cases, there are also the refugee cases. And I cited the Haitian case out of the Eleventh Circuit, Haitian refugee case. And who made the decision there? That was an Attorney General decision whether to grant a waiver with respect to a refugee application. Okay. But that wasn't a visa case. So that wasn't a visa case. Mandel was a visa case. I mean, whether it's a visa, that's, I think the refugee applications are the most analogous because, and that Broad v. Wirtz case when the application was made directly through the Bracero Program, that's an application for admission. It may not be a visa per se. It's a refugee application instead of a visa application or a Bracero Program, an application for admission. But if somebody is standing at the airport and does the same thing, then we know it is reviewable. If somebody is standing at the airport. Exactly. Because Congress has made it reviewable. That's when, it's the only time it can be reviewed is when Congress has provided for it. And they have provided for administrative and judicial review for removal cases. What about the application of the exception, the Kleindienst exception, if that's what it is, with regard to legitimate basis and bona fides? Well, constitutional, that's the only exception that I can find is the constitutional question exception, and then, of course, a constitutional standard would be applied. I mean, in this case, I don't know. Judge Moskowitz applied that standard, but I don't think it's a lesser standard for the government. I don't think it was the correct standard because it wasn't a constitutional standard.  But it sort of was. I mean, there was a claim of, as I understand it, there was a we do have an American citizen or American company Petitioner here, and they are claiming that they were essentially denied due process rights. Your Honor, that's, I look for any kind of argument concerning due process in the record. It's mentioned. It's rather short, but there is a footnote in the brief. To mention a footnote, I think, in the opening brief, it does not specify what the due process denial deprivation was. Well, I mean, it seems pretty obvious. It's that they made up their mind from day one and spent all their time trying to find some basis for denying this person a visa and did it for seven years or so. It's not – it did – it was a sort of peculiar thing that they decided that these two people in Russia for some reason were the object of so much attention to find some reason not to let them in. Well, I don't think that – I don't think that we can conclude that the consulate was determined, as argued up here, that the consulate was determined to deny the visa. If that were the case, then there would have been no necessity for the DHS to refuse the visa. You know, this would be an example and a rare example where there's a close case. It's a close case. And there might be a disagreement on how the law should be applied. And say they just sat on it for eight years or something like that. So they just sat on it for eight years. I don't think, no, the record says it should be seven years. Well, I mean, they investigated for eight years. Yes. There was – right. And there was investigation. And he kept bringing Mr. Romanofsky back in. He would deny. He'd throw them off by sending them court records instead of police records. I mean, there was a lot of back and forth. And none of this information was readily available to the consulate. I mean, their own – their own in-house investigative people couldn't find him initially. The FBI found no disposition of the case. But they did – they found that there had been an arrest. But they didn't know whether it was just an overnight cooling. Wasn't he actually quite right under California law that he wasn't arrested? Oh, absolutely not, Your Honor. He was booked. I'm sorry? He was booked. He was fingered. Yeah, but I thought under California law, if you're booked but never charged, that there's a specific provision that says that you're then detained but not arrested. It's a little odd, but that's what it says. Your Honor might be talking about the employment statutes, which say that when it comes to an employment application, someone doesn't have to put down that they were arrested if they weren't formally charged. But that's just in the employment arena. This is definitely an arrest. He was booked. And he was trying to say in his latest – last interview that he was just cooled off overnight at the police station. He wasn't – that's not what happened at all. He was transferred to the Sheriff's Department. He was booked. He had to be bailed out on a – bonded out on a $15,000 bond. This was clearly – clearly an arrest. He wasn't free to leave, I take it. No, Your Honor. All right. If there are no more questions, that's all I have. Thank you, Your Honors. Just briefly, what about the California statute? Is there a California statute that only applies to employment? I don't believe it does. I believe it applies across the broad – across the spectrum. It's cited in our opening brief and I'm trying to find it for you. It's California Penal Code Section 849.5 and 8.5.6d. What's it say? A person who has been arrested but not charged that can – is deemed to be a detention only. Something along the lines of that. It's not an exact quote. I'm paraphrasing. But that's the essence of it. And you also have an argument that that – for translation reasons that a Russian would so understand. Correct. That arrest in Russian implies that there's a six-month detention. Correct. So our argument on that is that the misrepresentation is not willful. But getting back to Judge Berzon's questions before about the source of the consular officer's authority to deny visas, the consular officer, the provisions of the Immigration Nationality Act, none of those provisions, and they are 8 U.S.C. Section 1101a.16, 8 U.S.C. 1202b, and 8 U.S.C. 1101a.9. None of those provisions say that the consular officer's decision must be in accordance with law. Must be what? Must be in accordance with law. But they do say that the consul has the authority and sole authority? Well, they define immigrant visas as issued by consular officers. They say all immigrant visa applications shall be reviewed and adjudicated by a consular officer. One of the provisions, 1101a.9, is just the definition of a consular officer. And then 8 U.S.C. 1201 just applies to nonimmigrant visas. So there's nothing saying anything about the consular officer, whether the determination is discretionary or legal. The consular officers are out there. And I think it's disingenuous to say that there's not they're not exercising discretion with all these visa applicants coming before them. And is there no appeal from a consular officer's? Absolutely not. Even to a superior in the Moscow embassy or anything like that? No, absolutely not. If there's a legal question, you could file a request for an advisory opinion for the visa office. But the visa office would just give their input on the legal issue, and that's not an appeal. It's a formal. In your view, if Condoleezza Rice called one of these consular officials and said, don't give a visa to this person, that would be reviewable? Condoleezza Rice's call to the consular officer? No. If the consular officer denies the visa on the basis of the Secretary of State's call, then that's reviewable because it was the Secretary of State who did it? No, because the Secretary of State's power to order the refusal of a visa, Congress didn't put the in accordance with law check on the Secretary of State. But if the Department of Homelessness, if Chertoff called Condoleezza Rice and then she calls the consular officer, then that is reviewable because we have to review it. But does the Secretary of State have the power? I thought it says that except those powers, duties, and functions conferred in consular offices relating to the granting or refusal of visas, which seems to say the Secretary of State doesn't have the power. Well, in the section 236C of 6 U.S.C., the Secretary of State has some authority to refuse or to ask consular officers to refuse visas. Okay. I'm sorry I asked the question. Sorry. Your time has expired. Are there any further questions? How are things in Switzerland? Fine. You go. You came a long way for this. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for today. The Court stands adjourned. This is for you.
judges: Schroeder, Silverman, Berzon